## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UnitedHealth Group Incorporated,
a Minnesota corporation,

Civil No. 05-CV-1289 (DSD/SRN)

        Plaintiff,

v.

**REPORT & RECOMMENDATION**

Lexington Insurance Company,
a Delaware corporation and
Columbia Casualty Company,
an Illinois corporation,

        Defendants.

---

Heidi A.O. Fisher, Jeffrey J. Bouslog, Katherine M. Wilhoit, Michael L. Dolan, for Plaintiff
    UnitedHealth Group Incorporated.

Charles Spevacek and Allan Taylor for Defendant Lexington Insurance Company.

Jerome B. Abrams and Kevin R. Lewis for Defendant Columbia Casualty Company.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

      This matter is before the Court upon Defendants' Motions to Dismiss (Docs. Nos. 4 and 9).  This

case has been referred to the undersigned for resolution of pretrial matters pursuant to 42 U.S.C. § 636

and Local Rule 72.1.

## I.   BACKGROUND

**A.**    **The Policies**

      Plaintiff UnitedHealth Group Incorporated ("UnitedHealth Group") is a diversified health and well-

being company with its principal place of business in Minnesota. (Complaint, ¶ 2 (Doc. No. 1)). Defendant Lexington Insurance Company ("Lexington") is a Delaware corporation, in the business of providing liability insurance. (Id., ¶ 3). Defendant Columbia Casualty Company ("Columbia") is an Illinois corporation and is also in the business of providing liability insurance. (Id., ¶ 4). This case arises out of an insurance coverage dispute between Plaintiff, UnitedHealth Group, and Defendants Lexington and Columbia. (Id., ¶ 1). Specifically, Plaintiff alleges that Lexington has improperly denied coverage for claims that are covered under a liability policy Lexington issued to UnitedHealth Group. (Id.). Plaintiff further alleges that Columbia is an interested party, potentially liable as an excess insurer whose policy follows the terms of the Lexington policy. (Id.).

UnitedHealth Group purchased a managed care professional liability policy (number 563-3385) from Lexington for the policy period of December 1, 1998 to December 1, 2000, ("Lexington Policy"). (Id., ¶ 8; see also Ex. A). The Lexington Policy provides broad coverage for liability claims brought against UnitedHealth Group and has the following limits of liability: $30 million per claim, $60 million aggregate (with a $3 million per claim self-insured retention and a $30 million aggregate self-insured retention.) (Id., ¶¶ 8-9).

Reliance Insurance Company of Illinois ("Reliance") issued an excess managed care professional liability policy (number NPD 0132342) to UnitedHealth Group for the policy period of December 1, 1998 to December 1, 2000 ("Reliance Policy"). (Id., ¶ 10; see also Ex. B). The Reliance Policy has limits of liability of $25 million per claim and a $50 million aggregate. (Id.). Plaintiff alleges that the Reliance Policy was to provide coverage above the respective liability limits provided by the Lexington Policy. (Id.). Plaintiff states that Reliance was liquidated in October, 2001 by Order of a Commonwealth Court of

Pennsylvania, and by statute, cannot be joined as a defendant in this lawsuit.  (Id., ¶ 11).  Plaintiff contends that Reliance is now insolvent and is subject to rehabilitation and liquidation proceedings still pending in the State of Pennsylvania.

UnitedHealth Group also received an excess managed care professional liability policy (number EMC 1040038924-0) from Columbia for the same policy period of December 1, 1998 through December 1, 2000 ("Columbia Policy").  (Id., ¶ 12; see also Ex. C.).  The Columbia Policy has limits of liability of $30 million per claim and $60 million aggregate which, Plaintiff alleges, attach above the respective Reliance Policy liability limits.  (Id.).  Plaintiff states that the Columbia Policy follows the terms and conditions of the Reliance Policy, which in turn, follows the terms and conditions of the Lexington Policy.  (Id.).

In accordance with the terms and conditions of the policies, UnitedHealth Group provided notice to Lexington, Reliance, and Columbia of hundreds of liability claims which had been made against Plaintiff and are covered under the Lexington, Reliance, and/or Columbia policies.  (Id., ¶ 13).  Lexington acknowledged coverage for many of the claims, but denied coverage for 35 of the claims tendered by UnitedHealth Group.  (Id., ¶ 14; see also Ex. D, List of Denied Claims).  UnitedHealth Group has attempted to persuade Lexington that the denied claims are covered under the Lexington Policy and Plaintiff has requested that Lexington withdraw its written denials of coverage and reimburse Plaintiff for its fees and costs with respect to the denied claims.  (Id., ¶ 15).  Lexington has refused to do either.  (Id., ¶ 16).

UnitedHealth Group claims that it has incurred in excess of $18 million in covered defense and/or settlement payments with respect to the denied claims.  (Id., ¶ 17).  UnitedHealth Group explains that Columbia is an interested party because several of the denied claims have yet to be resolved, and when combined with other covered claims falling within the Lexington Policy's aggregate coverage, the amount

claimed has the potential to penetrate Columbia's aggregate limit. (Id., ¶ 18).

**B.   Reliance Liquidation Proceedings**

Reliance was placed into liquidation in October, 2001 by Order of a Commonwealth Court of Pennsylvania, and, by statute, cannot be joined as a defendant in this lawsuit." (Complaint, ¶ 11; See also, Columbia Memorandum in Support of Motion to Dismiss, Exhibit A,  Reliance Liquidation Order, ¶ 5). The October 3, 2001 Order of Liquidation provides that "[t]he Commissioner, as Liquidator, is vested with title to all property, assets, contracts and rights of action ('assets') . . . ; and this Court specifically asserts, to the fullest extent of its authority, (a) in rem jurisdiction over all assets of the Company wherever they may be located . . .; (b) exclusive jurisdiction over all determinations of the validity and amount of claims against Reliance; and (c) exclusive jurisdiction over the determination of the distribution priority of all claims against reliance." Id.

**C.   The Complaint**

Plaintiff filed the current two count complaint.  Count One, Declaratory Judgment against Lexington and Columbia, alleges that Lexington has improperly denied coverage for the denied claims and requests that the Court issue a judicial declaration that the denied claims are covered under the Lexington, Reliance, and Columbia policies. (Id., ¶¶ 20 and 21).  Count Two is a Breach of Contract claim against only Lexington which alleges that Lexington's refusal to provide coverage for and reimburse Plaintiff with respect to the denied claims constitutes a breach of the Lexington Policy. (Id., ¶ 24).  Plaintiff claims that Lexington's breach has caused Plaintiff harm for which it is entitled to damages. (Id., ¶ 25).

Defendants Lexington and Columbia now move for dismissal of Plaintiff's Complaint.  Defendant Columbia moves to dismiss on three grounds: (1) pursuant to Rule 12(b)(1), that the Reliance liquidation

proceeding requires adjudication in the Commonwealth Court of Pennsylvania of any controversy over the application of a Reliance policy, which includes UnitedHealth Group's request for a declaration that certain disputed claims are covered under its Reliance Policy, and as a result this Court should abstain from hearing this case; (2) pursuant to Rule 12(b)(1), that this Court lacks subject matter jurisdiction to adjudicate the rights, responsibilities and priorities of the parties under the Columbia policy because UnitedHealth Group does not allege that the underlying claims in issue are ripe as to Columbia; and (3) pursuant to Rule 12(b)(6), that the "no action" clause of the Columbia Policy prohibits this action against Columbia. At the same time Columbia filed its Motion to Dismiss, it served on the Reliance Liquidator a Notice of Claim, together with a Proof of Claim, pursuant to the Reliance Liquidation Order and 40 P.S. §§ 211, et seq., to: (1) provide notice to the Liquidator of this lawsuit and of Columbia's Motion to Dismiss; and (2) request the consent and participation of the Liquidator to have the claims asserted by UnitedHealth Group in this case determined instead in the Reliance liquidation proceeding, since the claims and positions directly impact the Reliance estate. (See Columbia Memorandum in Support of Motion to Dismiss, p. 7).

Defendant Lexington moves to dismiss Plaintiff's Breach of Contract claim (Count Two) on the grounds that it fails to state a claim upon which relief may be granted under Rule 12(b)(6), and to dismiss Plaintiff's request for a Declaratory Judgment (Count One) on the grounds that it fails to allege an actual controversy for this Court to decide as required under 28 U.S.C. § 2201 and Article III of the United States Constitution.

## II.   STANDARD OF REVIEW

A.     **Motion to Dismiss**

Under Rule 12, a complaint should only be dismissed if it appears that the plaintiff cannot prove any set of facts that would entitle him or her to relief.  Schaller Telephone Co. v. Golden Sky. Systems, Inc., 298 F.3d 736, 740 (8th Cir. 2002) (citing Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993)); Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998)(a motion to dismiss is properly granted when there is no set of facts that would allow the plaintiff to recover).  The court is limited to considering the allegations of the complaint.  County of St. Charles, Mo. v. Missouri Family Health Council, 107 F.3d 682, 684 n.3 (8th Cir. 1997).  The Court is to assume the facts pleaded as true and to construe the facts in a light most favorable to the plaintiff.  Gebhardt v. ConAgra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (citing United States v. Aceto Agr. Chemicals Corp., 872 F.2d 1373, 1376 (8th Cir. 1989)).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal based on lack of subject matter jurisdiction.  Dismissal for lack of subject matter jurisdiction should be granted only sparingly and with caution.  See Huelsman v. Civic Center Corp., 873 F.2d 1171, 1174 (8th Cir. 1989). Through a motion to dismiss under Rule 12(b)(1), a party may challenge the sufficiency of the pleadings on their face or it may challenge the factual truthfulness of its averments outside of the pleadings.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

Once subject matter jurisdiction is challenged, the plaintiff has the burden of establishing that jurisdiction exists.  The plaintiff must validate the jurisdictional facts by competent proof or risk dismissal. Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir.1969) ("If the plaintiff's allegations of jurisdictional facts

are challenged by his adversary in any appropriate manner, he must support them by competent proof")
(citations omitted).

It is within the discretion of the court to determine how to proceed on jurisdictional questions, and
the court "may consider materials outside the pleadings such as depositions or affidavits in determining
whether the record demonstrates lack of subject matter jurisdiction." Satz v. ITT Financial Corp., 619
F.2d 738, 742 (8th Cir.1980).

## B.    Motion for Summary Judgment

If "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(b)(6)
motion may be treated as a motion for summary judgment "and disposed of as provided in Rule 56." Fed.
R. Civ. P. 12(b).  The Supreme Court has held that summary judgment is to be used as a tool to isolate
and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See
Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986); Fisher v. Pharmacia & Upjohn, 225 F.3d 915,
919 (8th Cir. 2000).  Summary judgment permits courts to issue a judgment as a matter of law, on the
merits, and without trial, as long as there are no genuine issues of material fact.  Fed.R.Civ.P. 56; see also
Reich v. ConAgra Inc., 987 F.2d 1357, 1359 (8th Cir. 1993).  Summary judgment is appropriate when
the moving party establishes, based on the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, that there is no genuine issue as to any material fact
and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex, 477 U.S.
at 322-23.  When considering a motion for summary judgment, the moving party bears the burden of proof,
and a court should construe all evidence in favor of the non-moving party. Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1986).  However, the party opposing summary judgment may not "rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine

issue for trial." Anderson, 477 U.S. at 249-56 (noting that if the evidence submitted by the non-moving

party is merely colorable or is not significantly probative, summary judgment may be granted); see also Fed.

R. Civ. P 56(e).  "The mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." Anderson, 477 U.S. at 247-48.  Thus, summary judgment is proper when the non-

moving party fails to provide the Court with specific facts indicating that there is a genuine issue of material

fact for trial. Maxwell v. K Mart Corp., 844 F. Supp. 1360, 1365 (D.Minn. 1994); Rainforest Café, Inc.

v. Amazon, Inc., 86 F.Supp.2d 886, 893 (D.Minn. 1994).

A genuine issue of material fact only exists if: (1) there is a disputed fact; (2) the disputed fact is

material to the outcome of the case; and (3) the dispute is genuine. RSBI Aerospace, Inc. v. Affiliated FM

Ins. Co., 49 F.3d 399, 401-02 (8th Cir. 1995).  For these purposes, a disputed fact is "material" if it must

inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine"

if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See

Anderson, 477 U.S. at 248.

## III.   DISCUSSION

Defendants Columbia and Lexington have moved to dismiss both counts of Plaintiff's Complaint.

Specifically, Defendant Columbia moves to dismiss on the grounds that this Court should abstain from

hearing this case pending resolution of the Reliance liquidation proceedings in Pennsylvania, that Plaintiff's

claims are not ripe as to Columbia, and the "no action" clause of the Columbia Policy prohibits this action

against Columbia.

Defendant Lexington moves to dismiss Plaintiff's Breach of Contract claim (Count Two) on the grounds that it fails to state a claim upon which relief may be granted under Federal Rule 12(b)(6), and to dismiss Plaintiff's request for a Declaratory Judgment (Count One) on the grounds that Plaintiff fails to allege an actual controversy for this Court to decide as required under 28 U.S.C. § 2201 and Article III of the United States Constitution.

**A.      Defendant Columbia's Motion to Dismiss (Doc. No. 4).**

This Court recommends that Defendant Columbia's motion to dismiss Count One of the Complaint be granted on the grounds that, pursuant to Rule 12(b)(1), this Court lacks subject matter jurisdiction to adjudicate the rights, responsibilities and priorities of the parties under the Columbia policy because UnitedHealth Group does not allege a ripe or justiciable controversy as to Columbia. Because this Court finds there is no subject matter jurisdiction to hear this case as to Columbia, we need not address Defendant's other grounds for dismissal: abstention and the "no action" clause.

Defendant argues that Plaintiff fails to plead a ripe and justiciable controversy between itself and Columbia. Specifically, Defendant argues that Plaintiff's contention that Columbia is an interested party, based on the <u>potential</u> that the Columbia policy may be implicated in this suit, does not qualify as a ripe controversy for this court to adjudicate. (<u>See</u> Complaint, ¶ 18, emphasis added).

In its Complaint, Plaintiff stated that it had incurred in excess of $18 million in covered defense and/or settlement payments with respect to the Denied Claims. (<u>See</u> Complaint, ¶ 17). Plaintiff goes on to state that "Because several of the Denied claims have yet to be resolved, and because the Denied Claims when combined with other covered claims falling within the aggregate coverage, have the potential to penetrate Columbia's aggregate limit, Columbia is an interested party to this dispute." (<u>See</u> Complaint, ¶

18).  Plaintiff later included an Affidavit stating that the denied claims had been resolved in the amount of

$20,308,091.  (Albright Affidavit, ¶ 9).  The Affidavit, however, introduced for the first time, the existence

of reserve amounts which reflect expected future defense costs and indemnity payments, if any.  (Albright

Affidavit, ¶ 2).  The Affidavit states that these defense and indemnity reserve amounts for remaining open

claims/lawsuits falling within the aggregate layer of coverage for the 1998-2000 policy have been set in the

amount of $22,391,822.  (Id.).  Plaintiff argues that the total defense and settlement payments made in

regards to the disputed claims, together with the reserves, which serve to pay the remaining open claim or

lawsuits, provide a reasonable probability that Columbia's layer of coverage will be penetrated.  That

"reasonable probability", Plaintiff argues, is all that is necessary to establish that a ripe or justiciable

controversy exists.

Defendant Columbia argues that Plaintiff's Complaint only relates to coverage for the disputed

claims which, in their total amount of $18 million, could only fall within the Reliance layer of coverage

without reaching the Columbia layer.  Defendant contends that there is no issue set forth in the Complaint

as to the reserves Plaintiff has created for any remaining open claims.  Instead, Defendant argues that

Plaintiff wrongly introduced this information through its Opposition Brief and affidavits ("Albright Affidavit")

and the Court should not consider this additional information as Defendant has moved to dismiss solely

upon the pleadings.  Furthermore, nowhere in the Plaintiff's pleadings or Affidavit does Plaintiff state that

there is, or will likely be, a dispute as to the remaining open reserve claims.

Defendant argues further that, even if the Court considers Plaintiff's evidence submitted through

the Albright Affidavit, there is still no ripe or justiciable controversy between Columbia and UnitedHealth

Group.  According to the Affidavit, Defendant argues, Plaintiff has paid in excess of $20,308,091 for

defense and indemnity for the disputed claims, $27,977,884 for undisputed claims, and has reserves for the remaining open claims of $22,391,822. (Albright Aff., ¶¶ 2, 9). Defendant argues that the total amount paid, with the exception of the denied claims, would be $50,269,706, which is still within the limits of the policies underlying the Columbia policy. (See Def. Reply, p. 11; see Ex. A, Chart on back of Reply). If the disputed claims are then determined to be covered, the Court would still need the following information before any claim against Columbia would be ripe: 1) a finding that the Reliance and Lexington policies, and Plaintiff's SIR (self-insured retention) were properly exhausted; 2) evidence that the amounts incurred for covered claims exceeded the underlying coverage and SIR; and 3) an actual dispute between UnitedHealth Group and Columbia as to whether any amounts in excess of the underlying coverage and SIR are covered. Defendant agrees that further factual development may not be needed as to the disputed claims because they have been fully resolved in the amount of $20,308,091. However, Defendant argues that, because the Columbia policy is not penetrated by the disputed claims, further factual development would be required to demonstrate that the Columbia policy is penetrated by adding the amount paid for the remaining open claims.

Plaintiff also seeks a Declaratory Judgment against Defendant Columbia under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Act provides that federal courts may grant declaratory relief in "a case of actual controversy." See 28 U.S.C. § 2201. The Supreme Court has noted that the "case of actual controversy" language limits federal court action to justiciable cases. Pub. Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, 345 F.3d 570, 572 (8th Cir. 2003), citing, Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937). The controversy must be live throughout the course of the litigation and exist at the time of the district courts' hearing on the case. Marine Equip. Mgmt. Co. v.

United States, 4 F.3d 643, 647 (8th Cir. 1993).  The Eighth Circuit has held that "[t]he ripeness doctrine

flows both from the Article III 'cases' and 'controversies' limitations and also from prudential

considerations for refusing to exercise jurisdiction.  Pub. Water Supply Dist., 345 F.3d at 572, quoting,

Nebraska Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000).  The

ripeness inquiry requires a court to examine both "the fitness of the issues for judicial decision and the

hardship to the parties of withholding court consideration." Id., at 572-73.  The Eighth Circuit has held that

a party seeking judicial relief must satisfy both the fitness for judicial decision prong, as well as the hardship

prong. Id., at 573, quoting, Nebraska Pub. Power, 234 F.3d at 1039.

To determine whether an issue is fit for judicial decision, the court focuses on whether a case would

benefit from further factual development.  Pub. Water Supply Dist., 345 F.3d at 573, citing Nebraska Pub.

Power, 234 F.3d at 1038, and Nat'l Right to Life Political Action Comm. v. Conner, 323 F.3d 684, 692-

93 (8th Cir. 2003).  A case is more likely to be ripe if it is not contingent on future possibilities.  Id., at 573.

To satisfy the hardship prong of the ripeness inquiry, speculative or "[a]bstract injury is not enough.

It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury

as the result of the challenged statute or official conduct."  Pub. Water Supply Dist., 345 F.3d at 573,

quoting, O'Shea v. Littleton, 414 U.S. 488, 494 (1974).  A case is not considered ripe if the plaintiff

makes no showing that "the injury is direct, immediate, or certain to occur."  Id., at 573; see also Paraquad,

Inc. v. St. Louis Hous. Auth., 259 F.3d 956, 958-59 (8th Cir. 2001) ("[T]he injury must be certainly

impending."); Employers Ass'n Inc. v. United Steelworkers of America, AFL-CIO-CLC, 32 F.3d 1297,

1299 (8th Cir. 1994) ("Ripeness is demonstrated by a showing that a live controversy exists such that the

12

plaintiffs will sustain immediate injury . . .").  The uncertain possibility of a future dispute, without more, is insufficient to establish impending or immediate injury.  See Pub. Water Supply Dist., 345 F.3d at 573; see also, Marine Equip. Mgmt. Co., 4 F.3d at 647 (refusing to declare the rights of the plaintiff against future litigants when there was not a substantial probability that any such claims would ever be made).

In Pub. Water Supply Dist., the public water supply district sued the City of Peculiar, Missouri, seeking a declaratory judgment that the city was illegally acting to dissolve the district in violation of federal law, as well as damages arising from any curtailment of its right to sell water within its territory due to the city's illegal competition.  345 F.3d 570.  In finding that the action was not ripe for review, the Eighth Circuit noted that the plaintiff had not satisfied the hardship prong because its injury was speculative.  Id., at 573.  The Court noted that, in that case, there was no contention that the Plaintiff was suffering an injury at that time, that the necessary steps to create an injury in the future had been taken, or would ever be taken.  Id., ("There is no contention that the District is suffering an injury now.  The only possible injury to the District is dissolution . . . Yet no petition for dissolution has been filed, and it is not clear that a petition will ever be filed.").  In addition, the court determined that the plaintiff faced no hardship as a result of the court withholding review because plaintiff could raise its claim in other proceedings if and when a petition for dissolution was filed.  Id..  Finally, the court found that, regarding the fitness of the issues prong, the case would benefit from further factual development as the issue was dependent on facts not yet in evidence and the City's role in any injury without further facts seemed ambiguous.  Id., at 574.  The court stated that, while it is not easy to draw an exact line between ripe cases and premature cases, "[t]his case, however, is clearly not ripe because the threat of injury is not 'certainly impending,' there is no hardship to the District in denying review, and the development of additional facts would focus the dispute."  Id..

13

Similarly, this Court finds that Plaintiff has failed to satisfy either prong of the ripeness inquiry. Based on the Complaint alone, Plaintiff cannot demonstrate that its damages implicate Columbia in any way as they do not penetrate the Columbia policy layer.   Even when considering the additional information proffered in the Albright Affidavit, Columbia's relationship to the current suit is contingent on too many uncertain future possibilities, and requires further factual development.  First, a determination that the denied claims are covered under the Lexington or Reliance policy is necessary to even make reaching the Columbia policy possible.   Second, it would have to be determined that the coverage amounts due, together with any reserve amounts paid and requiring coverage, exceed the underlying policies' limits. Third, an actual dispute regarding coverage of the disputed claims or the reserve claims paid would have to arise between Plaintiff and Columbia.  At this point, no decision as to coverage of the disputed claims under the Lexington Policy or the Reliance Policy has been made.  In addition, there is no evidence at this point that the reserve amounts will ever be paid out and require coverage, or if coverage is required, that the amount covered will penetrate the Columbia policy layer.  Finally, in the event that the Columbia Policy is penetrated, there is no evidence that Columbia will dispute coverage of the disputed claims or any other remaining open claims.

Furthermore,  Plaintiff has not demonstrated an impending or immediate injury, or that it will suffer adequate hardship due to this Court withholding consideration at this time.  Based on the required further factual development, it is premature at this time to determine what, if any, issues will exist between Columbia and  UnitedHealth Group, and Plaintiff's alleged injuries are speculative.  See State of Mo. ex rel. Nixon v. Rumsfeld, 2005 WL 2172392 (E.D.Mo. 2005) (Until decision making process is complete and contingencies regarding actions to be taken removed, any alleged injury is speculative and claims are

14

not ripe for judicial review.).  In addition, Plaintiff has the opportunity to present and seek determinations on some of these issues through the pending Reliance Liquidation proceeding in Pennsylvania.  Finally, Plaintiff's concern that it may be injured by having to make "front" payments of covered defense costs and settlement payments, before obtaining reimbursement from Columbia, is contingent on there being a dispute as to coverage of those claims if and when Plaintiff incurs such costs which reach the Columbia layer.  This Court finds that the potential injuries Plaintiff presents do not constitute  the "direct, immediate, or certain" injury required under the ripeness hardship prong.

In addition, the case law upon which Plaintiff relies is distinguishable.  In Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677 (7th Cir. 1997), plaintiff, Bankers Trust, brought an action seeking a declaratory judgment that excess liability insurer, Old Republic, should indemnify its insured, LKA, up to the limits of its policy if plaintiff won a judgment against LKA in an underlying fraud suit.  The court acknowledged that the general rule, while not absolute, was that a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody.  Id., at 680.  However, the court found that the  situation before it was different and an actual controversy did exist between the parties.  In that case, Old Republic, the excess insurer, was contesting the validity of the insurance policy it issued to the insured.  Indeed, Old Republic had actually initiated a suit against the insured to rescind the policy on the grounds that the insured knew that Bankers Trust might try to sue Old Republic and had failed to warn them.  Id., at 681.  "This case is different. There is a real disagreement between Bankers Trust and Old Republic, with the former believing that the $3 million policy that Old Republic issued to LKA is valid and Old Republic believing not; and it is not an academic disagreement-- Old Republic  would not have  sued LKA if it were. Old Republic does not argue that that suit failed to

15

invoke the jurisdiction of the district court, though it is no more and no less contingent than Bankers Trust's suit, which indeed is just the mirror image of Old Republic's." Id., at 681. In addition, the court found that the second excess insurer was implicated by an actual controversy in the suit as it also contested the validity of the underlying policy. Id.

Similarly, Plaintiff's reliance on Home Indem. Co. v. Stimson Lumber Co., 229 F.Supp.2d 1075, 1081 (D.Ore. 2001) is misplaced. In Home Indemnity, the plaintiffs (primary insurers) filed a suit for a declaratory judgment against the insured and the excess insurers of the insured, seeking a determination of their duty to defend and indemnify, as well as an allocation of liability between the primary and excess insurers. Id.. In that case, the insurer had brought the suit regarding its obligations to defend and indemnify. At issue in the case was not the excess insurer's motion to dismiss, but rather, the insured's motion to transfer or stay the litigation.

The Court in Raytheon Co. v. Continental Casualty Co., 123 F.Supp.2d 22, 30-31 (D.Mass 2000) determined that while absolute proof that the excess policy would be reached is not necessary in determining whether a declaratory judgment should be issued with respect to parties' rights and obligations under an excess policy of insurance, "plaintiff must show a 'reasonable likelihood that the claims will mature as to that defendant.'" In Raytheon, the court held that an actual controversy existed as to an insurer who was providing both primary and excess insurance coverage, and the complaint specifically alleged that the insurer breached its obligations under the excess policies. Id., at 26.

In the current case, there is neither a current dispute nor a disagreement, nor evidence of a future dispute, between Columbia and UnitedHealth Group regarding the disputed claims or the remaining open claims that would justify departing from the established test for ripeness expressed in Bankers Trust. Unlike

16

Home Indem., in this case, the insurers have not sought declaratory relief as to their relative obligations under the policies. Furthermore, that there is any dispute between Columbia and UnitedHealth Group at all, is directly contested by Columbia. Finally, unlike Raytheon, there are no allegations in this action that Columbia, as a separate excess insurer from Lexington or Reliance, breached any obligations under the Columbia Policy. This Court finds that Plaintiff has failed to meet the test for demonstrating a reasonable or practical likelihood that the contingencies upon which Columbia's involvement in this suit depend will, in fact, occur.

As such, this Court finds that this case is "clearly not ripe because the threat of injury is not 'certainly impending,' there is no hardship to [UnitedHealth Group] in denying review, and the development of additional facts would focus the dispute." Pub. Water Supply Dist., 345 F.3d at 574. It merits mentioning, that this Court acknowledges that, in a subject matter jurisdiction challenge pursuant to Rule 12(b)(1), this Court may look at evidence outside the record. Indeed this Court has looked at Plaintiff's submitted affidavits. However, this Court also notes that such affidavits cannot contain facts supporting new claims that have not already been pled. In this case, this Court finds that the affidavits submitted by Plaintiff exceed the claims in the Complaint.

Accordingly, this Court recommends that Plaintiff's claims against Columbia be dismissed without prejudice. Plaintiff is free to bring such claims at a later time if and when they become ripe. **B.**

**Defendant Lexington's Motion to Dismiss (Doc. No. 9).**

Defendant Lexington moves to dismiss Plaintiff's Breach of Contract claim (Count Two) on the grounds that it fails to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), and to dismiss Plaintiff's request for a Declaratory Judgment (Count One) on the grounds that

Plaintiff fails to allege an actual controversy for this Court to decide as required under 28 U.S.C. § 2201 and Article III of the United States Constitution.  Defendant Lexington argues that the monetary limits under the Lexington Policy have been completely exhausted by the payment of defense costs and indemnity on other, unrelated claims at Plaintiff's request.  As such, Lexington contends it has no further obligation under the contract and cannot owe Plaintiff anything with respect to the denied claims.  It follows then, Defendant argues, that there is no actual controversy remaining in this case as required by 28 U.S.C. 2201, and this Court lacks subject matter jurisdiction over Count One.  Defendant Lexington submitted the Affidavit of Howard Tripolsky, along with its motion, which addresses the issue of whether the monetary limits of the Lexington Policy are exhausted.  As a result, Defendant Lexington asks this Court to treat Defendant Lexington's motion to dismiss Count Two of Plaintiff's Complaint as a motion for summary judgment under Rule 56.  See Fed.R.Civ.P 12(b); (see also, Lexington's Memorandum in Support of its Motion to Dismiss, p. 2).

Plaintiff responds that there is no need for this Court to go beyond the face of the Complaint, as Plaintiff alleges that Lexington breached the Lexington Policy by failing to acknowledge coverage and pay monies owed, when owed, under the contract. (See Complaint, ¶¶ 24-25, emphasis added; See Plaintiff's Memorandum in Opposition to Defendant Lexington's Motion to Dismiss ("Plaintiff's Memo.") p. 10). Regardless, Plaintiff argues that Defendant's motion also fails as a motion for summary judgment because there is a factual dispute as to whether the Lexington Policy monetary limits have actually been exhausted. (See Plaintiff's Memo., p. 10-11).

### 1.     Breach of Contract Claim

The contract setting forth the Lexington Policy provides that Lexington "will pay amounts any Protected Person is required to pay as damages and claim expenses" for covered claims. (Complaint, Ex. A, Lexington Policy, § 3.1). The contract sets the aggregate limit of the policy at $60 million. (Id., § 8.2). Furthermore, the contract provides that Lexington's duty to pay anything ends when the limits of liability have been exhausted. (Id., § 4.9).

When Lexington denied coverage of the disputed claims, Lexington had funds remaining in the aggregate amount of the policy. Although Lexington denied coverage for the disputed claims and refused to make payments on those claims, Lexington continued to make payments on other unrelated non-disputed claims that UnitedHealth Group presented to it after the denial of the disputed claims. (Tripolsky Affid., ¶8). As such, Lexington argues that its obligations were reduced by the payments towards ongoing unrelated and non-disputed claims and its liability limits were eventually reached by such payments. (Id.). Lexington acknowledges that, at the time this suit was filed, there was $212,355.19 remaining of the policy's aggregate limit, but contends that the remaining amount was forwarded to UnitedHealth Group to be applied toward defense or indemnity of claims still pending and not in dispute. (Id., ¶¶ 11, 12). Lexington argues that there is no reason to litigate whether the disputed claims should have been covered under the Lexington Policy because Lexington no longer has a duty to pay any further claims to UnitedHealth Group.

Plaintiff responds that litigation as to whether the disputed claims were wrongfully denied by Lexington is still necessary because, at the time the claims were denied, Lexington's limits had not been met and Lexington should have paid those claims. Plaintiff disagrees that the limits have been met even with Lexington's post-lawsuit payment, and argues that the funds should have been used to cover claims as they

19

were incurred as opposed to being applied to pay later incurred but not disputed covered claims.  Plaintiff

contends that it is entitled to a determination that the disputed claims should have been covered.  In

addition, Plaintiff argues that the funds that were in the policy account when the claims were denied, or that

currently remain in the account, should be allocated to cover the disputed claims because they were

incurred first and Plaintiff's later payments actually paid claims that should have been within the Reliance

layer of coverage.  Plaintiff argues that this allocation should occur even if it requires Plaintiff to return

payment of non-disputed claims that reach over the aggregate limit.  Furthermore, if the question of

coverage under the Lexington Policy is not litigated, and Plaintiff seeks coverage of those claims under the

Reliance Policy, Plaintiff states that it runs the risk that Reliance will argue that it does not have an obligation

to cover claims that should have been covered under the Lexington Policy, or that Reliance will only cover

claims that arose after Lexington's exhaustion limit was reached.  Plaintiff states that Lexington is relying

on having made payments to claims that, as incurred, fell within the Reliance layer to exhaust its own

aggregate limit and avoid determination of whether the disputed claims  should have been covered.

First, whether Lexington's aggregate monetary limits have been exhausted is a fact question.

Defendant argues that those limits have been exhausted, but represents that if they are not, it is willing to

pay UnitedHealth Group the amounts that remain to go towards any unrelated non-disputed claims that still

exist.  Plaintiff disagrees that the aggregate limits have been exhausted and contends that Lexington is more

than $2 million away from exhausting its monetary limits.  Plaintiff argues that, as a result, there exists a

genuine issue of material fact which precludes either dismissal or summary judgment of Count Two, and

Defendant Lexington's motion should be denied.  (Plaintiff's Memo., at p. 12).  Defendant responds that

a small amount of discovery should reveal that the limits have been exhausted and should be allowed for

20

the purposes of this summary judgment motion.  (See Def. Lexington's Memo in support of motion to dismiss, p. 8, fn. 3).  Defendant Lexington states that if it is discovered that the account is not exhausted, it will pay the remaining amount.

This Court recommends converting Defendant Lexington's motion to dismiss, as Lexington requests, to a motion for summary judgment.[1]  That motion, however, should be denied without prejudice because this Court finds that a genuine issue of material fact exists as to whether the Lexington Policy account limits have actually been exhausted.  After the necessary discovery, Lexington may renew its motion.

### 2.    Declaratory Judgment Claim

Count One of Plaintiff's Complaint requests a declaratory judgment that the claims denied by Lexington are covered by the Lexington Policy, the Reliance Policy, and the Columbia Policy. Defendant argues that because Lexington's contractual obligations have been fulfilled, there is no actual controversy between Lexington and UnitedHealth Group to be determined by this Court as required by The Declaratory Judgment Act, 28 U.S.C. 2201(a), and Article III of the United States Constitution.  As a result, Defendant Lexington argues that Count One should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Defendant argues that UnitedHealth Group cannot obtain from

---

[1]  "When converting a motion to dismiss to one for summary judgment, a district court is normally required to give notice of that fact to the parties, a requirement that generally must be strictly complied with.  Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1005 (8th Cir.2000).  Here, however, Defendant Lexington recommended that its Rule 12 motion be converted and concedes that some discovery may be necessary before summary judgment can be entered.  In light of the unique posture of this case, Plaintiff will have a full opportunity to respond to Defendant Lexington's renewed motion for summary judgment.

Lexington any more than it already has obtained under the Lexington Policy.  Also, Defendant contends that any possible amounts that remain would be exhausted by the payment of ongoing claims before final judgment is determined in this case.

Because UnitedHealth Group has made demands for payment of defense and indemnity costs and Lexington has disputed those demands, Plaintiff contends that an actual controversy does exist between Plaintiff and Defendant Lexington sufficient to invoke this Court's jurisdiction.

The Declaratory Judgment Act provides that federal courts may grant declaratory relief in "a case of actual controversy."  See 28 U.S.C. § 2201.  The Supreme Court has noted that the "case of actual controversy" language limits federal court action to justiciable cases.  Pub. Water Supply Dist., 345 F.3d at 572, citing, Aetna Life Ins. Co. v. Haworth, 300 U.S. at 239-40 (1937).  The controversy must be live throughout the course of the litigation and exist at the time of the district courts' hearing on the case.  Marine Equip. Mgmt. Co. v. United States, 4 F.3d at 647.  The "a case of actual controversy" language incorporates the "case or controversy" requirement of Article III of the United States Constitution.  Id., at 646; see also Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 325 (1936), cited in Executive Risk Indem. v. Sprint Corp., 282 F.Supp. 2d 1196, 1202 (D.Kan. 2003).

Defendant's reliance on case law is misplaced.  For example, in Interco Incorporated v. National Surety Corp., the Eighth Circuit upheld summary judgment on behalf of excess insurers, not because of lack of subject matter jurisdiction for lack of a justiciable controversy, but rather based on a determination that the excess insurers' policies were unambiguous as a matter of law in precluding drop down coverage in the event of the insolvency of the first-tier excess liability carrier.  900 F.2d 1264, 1269.  In this case, there are fact issues regarding coverage which remain, including  a fact issue as to whether Lexington's liability

22

limits actually are exhausted.

In addition, Durabla Mfg. Co. v. Continental Casualty Co., 2000 WL 1196319 * 14 (D.Minn. 2000) actually supports the Plaintiff's position. In Durabla, the court declined to dismiss the excess insurers because there was not sufficient evidence to determine whether or not the prior layer of coverage had been exhausted. Id.

> "We are satisfied that, currently, Durabla's indemnity claims against General and American are premature and not justiciable **if**, in fact, the underlying primary and excess policies of Goodyear have not been exhausted. However, since there is no evidence, currently of Record, that such an exhaustion has not occurred, we decline to dismiss General and American from this action, on justiciability grounds, until that question of exhaustion has been resolved."

Id., (emphasis added).

This Court finds that there is a fact question as to whether Lexington's limits have been exhausted. Because there is a genuine issue of material fact as to that issue, there is a case or controversy, and Defendant's motion to dismiss should be denied.

## III.   RECOMMENDATION

**THEREFORE, IT IS HEREBY RECOMMENDED THAT:**

1.   Defendant Columbia's Motion to Dismiss (Doc. No. 4) be **GRANTED**; and

2.   Defendant Lexington's Motion to Dismiss (Doc. No. 9) be **DENIED without prejudice**.

Dated:   December 12, 2005        s/Susan Richard Nelson
                                  SUSAN RICHARD NELSON
                                  United States Magistrate Judge

23

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by **12/27/05** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.